UNITED STATES of America,
Plaintiff-Appellant,

v.

Walter C. ROBSON, Defendant-
Appellee.

No. 72–3114.

United States Court of Appeals,
Ninth Circuit.

April 13, 1973.

Stephen V. Wilson, Asst. U. S. Atty. (argued), William D. Keller, U. S. Atty., Eric A. Nobles, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellant.

Clyde R. Maxwell (argued), Los Angeles, Cal., for defendant-appellee.

Before DUNIWAY and WRIGHT, Circuit Judges, and RENFREW,* District Judge.

EUGENE A. WRIGHT, Circuit Judge:

The government has appealed from an order of the district court suppressing certain exhibits. Respondent taxpayer was indicted on three counts of income tax evasion [26 U.S.C. § 7201] charging him with willfully failing to report more than $100,000 in taxable income for the calendar years 1965, 1966, and 1967.

During the trial below the government attempted to introduce into evidence three handwritten transcripts of some of respondent Robson's business records taken by an Internal Revenue Agent in the office of Robson's accountant with Robson's approval. Respondent moved to suppress these exhibits, but the motion was untimely. The court indicated that while it agreed with respondent on the merits of his motion it could not order suppression at that time since such an order would not preserve the govern-ment's right to appeal. At the court's suggestion, respondent moved for a mistrial, followed by a motion for suppression. Both motions were granted, and the government's right to appeal under 18 U.S.C. § 3731 was preserved.

Inquiry into respondent's tax matters dated from a telephone call to the local IRS office in March 1968. The caller, a young woman who stated that she was engaged to Robson in 1967, reported that he might be guilty of income tax evasion. She indicated the kind of business practice used and described some assets owned by Robson, including a boat, two automobiles and two lots. She also gave the names of banks where he did business. The informant indicated that she was filing a claim for a reward should any back taxes be assessed against and collected from respondent as a result of her information.

According to established IRS procedure, this information was taken over the phone by a special agent of the Intelligence Division assigned to receive such intelligence information items from the public. The information item was subsequently evaluated by another agent in the Intelligence Division to determine if the item had potential for an Intelligence Division criminal investigation. In light of the fact that there were no prior information items in the files with respect to Robson, and also because the information given by the informant was vague on several key points, this agent decided that the item did not warrant a criminal investigation by the Intelligence Division. Again according to established procedures, the information item was then forwarded to the Audit Division for its evaluation.

The Audit Division evaluated this information item in light of respondent's returns for the years in question and apparently decided that an audit was in order to determine the existence of any additional tax liability. After the referral to the Audit Division, the informant called in again.

* Of the Northern District of California.

This time she related that Robson had bragged that he had embezzled approximately $80,000 from one business during the previous year. She also indicated that by her estimate Robson had taken approximately $250,000 over the last three years. This information was not acted upon by Intelligence Division, but was instead simply forwarded to Audit Division to be added to the previous item.

Agent Larry Koba of the Audit Division was assigned the Robson case. His assignment was to examine Robson's tax affairs for the relevant years in order to determine the correct tax liability. His instructions were no different than those given him in examining any other return. Specifically, he was given no special instructions regarding fraud.

On June 24, 1968, Agent Koba wrote to Robson indicating that the latter's tax returns for 1965 and 1966 had been assigned to Koba for examination. Koba asked Robson to call and to arrange for a mutually convenient time for Koba to examine the books and records used by Robson in the preparation of his returns. Subsequently Robson's accountant, Mr. Gillmore, called Koba to arrange for an appointment.

The record discloses that Agent Koba at no time informed Robson of his Fifth and Sixth Amendment rights. Nor was Robson informed by Agent Koba of the criminal potential inherent in his investigation, or of Robson's right under the Fourth Amendment to demand a warrant before submitting his records for examination.

After auditing the records, Koba concluded that Robson had received over $100,000 in income that had not been reported in his returns.[1] Pursuant to standing orders to refer any case to the Intelligence Division upon the discovery of an indication of fraud during the course of an audit, Agent Koba referred

the Robson case to the Intelligence Division. That Division then conducted a criminal investigation, and this prosecution ensued.

During the trial below, the government attempted to introduce into evidence three handwritten transcripts of Robson's business records taken by Agent Koba during the course of his examination of the records. The district court granted respondent's motion to suppress, on the following reasoning:

The reason I am granting the motion, Mr. Wilson, is that it appears to me from the evidence in this case—and I take the word from a question asked by you—that the audit, the civil audit, stemmed solely from, for no other reason but, the investigative report and the conduct of the special agents in notifying the Revenue agents of the possible tax fraud of Mr. Robson. The proximate causation, the sole causation, the only reason, and not a single other reason, why there was a civil audit of Mr. Robson stemmed solely from the acts of the special agent.

At that time the Government had one of two choices to make. The Government could have gone ahead and conducted an audit and would have at that time been limited in its remedies to civil relief. But if the Government did not want to limit its remedy to civil relief, it then had an obligation to inform the taxpayer and the taxpayer's agents of his right to refuse the examination of his books.

The government, under the facts of this case, did not have the right to exercise its options after the fact. The option had to be exercised before there was an examination of Mr. Robson's books.

If the Revenue agents had examined the books as a result of another practice or procedure or there had been another cause or there had been an-

---

[1]. The books in themselves were complete. Agent Koba concluded, however, that Robson's disbursements greatly exceeded his acknowledged receipts for the years in

question. On the basis of this information, Koba made the calculation of the additional tax due.

other reason why the books were audited, my ruling, of course, would have been different. But when the sole cause of the audit is a result of the efforts of the special agents, then the Revenue agent is acting as the agent of the special agent and the Fourth Amendment and Fifth Amendment rights of the defendant have been violated, primarily the Fourth Amendment.

On the facts of this case, there are four possible grounds for the suppression of these exhibits: (1) under the Fifth and Sixth Amendments because Robson was not warned of his *Miranda*-type rights; (2) under the Fifth Amendment because the IRS agents violated due process by not following their internal regulations directing them to give certain warnings to taxpayers suspected of criminal violations; (3) under the Fourth Amendment because Robson's consent to the search was induced by trickery, deceit, or misrepresentations of Agent Koba; or (4) under the Fourth Amendment because Robson's consent to the search was not a "knowing and voluntary" waiver of his right to demand a warrant.

## FIFTH AND SIXTH AMENDMENTS

### *Miranda-Type Warning*

■ In Kohatsu v. United States, 351 F.2d 898 (9th Cir. 1965), we held that where agents of the Intelligence Division had properly identified themselves and disclosed their purpose to audit tax returns, they were under no duty to advise the taxpayer of his Fifth Amendment rights or of the criminal nature of the investigation. We reaffirm that holding, and refuse to follow the only circuit to adopt a contrary view, the Seventh.[2]

This court has repeatedly refused to extend the *Miranda* rule beyond its stated limits. Simon v. United States, 421

F.2d 667 (9th Cir. 1970). As we stated in *Simon:*

"Absent custody in the conventional sense, we have declined to fault a government agent and reverse a conviction for failure to give a *Miranda* type warning unless the facts clearly demonstrated that the appellant was 'deprived of his freedom by the authorities in any significant way.'" *Id.* at 668.[3]

■ Here respondent was not deprived of his freedom in any way and accordingly we hold that Agent Koba was under no duty to inform respondent of his *Miranda*-type rights, including the fact that the investigation could have potential criminal consequences. The fact that Agent Koba had an informant's tip suggesting possible tax evasion in no was distinguishes the instant case. Feichtmeir v. United States, 389 F.2d 498 (9th Cir. 1968).

## FIFTH AMENDMENT

### *Due Process*

On October 3, 1967, approximately one year before Agent Koba initiated his investigation, the Internal Revenue Service issued News Release No. 897, which stated in relevant part as follows:

In response to a number of inquiries the Internal Revenue Service today described its procedures for protecting the Constitutional rights of persons suspected of criminal tax fraud, during all phases of its investigations.

Investigation of suspected criminal tax fraud is conducted by Special Agents of the IRS Intelligence Division. This function differs from the work of Revenue Agents and Tax Technicians who examine returns to determine the correct tax liability.

Instructions issued to IRS Special Agents go beyond most legal requirements to assure that persons are advised of their Constitutional rights.

---

2. United States v. Dickerson, 413 F.2d 1111 (7th Cir. 1969).

3. *Cf.* Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968).

On initial contact with a taxpayer, IRS Special Agents are instructed to produce their credentials and state: "As a special agent, I have the function of investigating the possibility of criminal tax fraud."

If the potential criminal aspects of the matter are not resolved by preliminary inquiries and further investigation becomes necessary, the Special Agent is required to advise the taxpayer of his Constitutional rights to remain silent and to retain counsel.

■ Respondent would have us say that Koba was acting as an agent of the Intelligence Division at the time of his initial contact with Robson and during the audit of his records. Assuming *arguendo* that the failure of the IRS to follow its procedures designed to protect the rights of taxpayers amounts to a violation of due process under the principle of United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954),[4] we find nothing in the record before us indicating that Koba was an agent of the Intelligence Division.

Koba made the same type of civil audit that he conducted in all cases, regardless of the initial impetus for the audit. He had no instructions from the Intelligence Division, had no interim conferences with its representatives, and was under no obligation to report to it unless his audit uncovered an indication of fraud. In short, the investigation conducted by Koba was completely independent of the Intelligence Division, except for the fact that the informant's tip that led to the audit originally came from that Division. That fact, however, in the context of this investigation, is meaningless.

Every informant's tip received by the IRS comes through the Intelligence Division. However, not every tip results in an Intelligence Division investigation. Such is the case here. The Intelligence Division concluded that the information

in the tip did not warrant a criminal investigation, and none was conducted. The resulting investigation conducted by Koba was of no greater scope than a routine civil audit to determine tax liability.

Accordingly, we conclude that the trial court was in error in concluding from these undisputed facts that Koba was an agent of the Intelligence Division. Having decided that, we hold that there was no violation of due process in Koba's failure to give the warnings required of special agents of the Intelligence Division.

## FOURTH AMENDMENT

### *Deceit, Trickery, and Misrepresentation*

■ It is a well established rule in this and other circuits that a consent search is unreasonable under the Fourth Amendment if the consent was induced by the deceit, trickery or misrepresentation of the Internal Revenue agent. Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921); United States v. Bland, 458 F.2d 1 (5th Cir. 1972); United States v. Jaskiewicz, 433 F.2d 415 (3rd Cir. 1970); United States v. Prudden, 424 F.2d 1021 (5th Cir. 1970); Spahr v. United States, 409 F.2d 1303 (9th Cir. 1969); Cohen v. United States, 405 F.2d 34 (8th Cir. 1968); Kohatsu v. United States, supra; United States v. Sclafani, 265 F.2d 408 (2nd Cir. 1959).

Respondent urges that the failure of Agent Koba to advise Robson or his accountant that the true purpose of his audit was to verify an informant's tip as to the crime of tax evasion constituted deceit and trickery sufficient to vitiate Robson's consent to the search of his records. We disagree.

■ In applying the principle first announced in Gouled v. United States, *supra*, we have consistently held that the failure of an IRS agent, be he Special or Revenue, to warn a taxpayer that an audit may have potential criminal ramifi-

---

4. The Fourth Circuit has so held in United State v. Heffner, 420 F.2d 809 (1970).

cations does not render the search unreasonable. Spahr v. United States, *supra;* Kohatsu v. United States, *supra; accord,* United States v. Bland, *supra;* United States v. Stamp, 458 F.2d 759 (D.C. Cir. 1971); United States v. Stribling, 437 F.2d 765 (6th Cir. 1971); United States v. Jaskiewicz, *supra;* United States v. Prudden, *supra;* Cohen v. United States, *supra.*

■■ However, the IRS agent must not affirmatively mislead the taxpayer into believing that the investigation is exclusively civil in nature and will not lead to criminal charges. Cohen v. United States, *supra.* The record undisputedly disclosed that Agent Koba did not represent his audit to be simply "civil" in nature. In fact, Agent Koba did not indicate to Robson that he intended to conduct a "civil" audit; rather, he told Robson that his tax returns "have been assigned to me for examination." We therefore find that Agent Koba made no affirmatively misleading statements concerning the potential consequences of his audit.

Respondent would have us hold, however, that Koba's silence as to the criminal potential of his audit was an affirmative misrepresentation of the true nature of the audit. As the Fifth Circuit recently stated in United States v. Prudden, *supra,* 424 F.2d at 1032:

"Silence can only be equated with fraud where there is a legal or moral duty to speak or where an inquiry left unanswered would be intentionally misleading."

None of these factors was present here. As noted above, Agent Koba was under no duty to mention the possible criminal consequences of his audit, and the record discloses no intimation that Koba was ever queried as to the scope of his investigation.

We therefore hold that Robson's consent to the search of his records was not induced by Agent Koba's deceit, trickery, or misrepresentation, and that the exhibits cannot be suppressed on that theory.

## FOURTH AMENDMENT

*Waiver of Right to Demand Warrant*

It is undisputed that Agent Koba did not inform Robson of his Fourth Amendment right to demand a warrant before making his records available for audit. It is also undisputed that Robson, through his agent Gillmore, did affirmatively consent to Koba's search of his records. The question we must decide is whether Robson's consent amounted to a "knowing and voluntary" waiver of his right to demand a warrant.

At the outset we note our reaffirmance today of the holding of Kohatsu v. United States, *supra,* that the fruits of an IRS agent's search need not be suppressed because of his failure to warn the taxpayer of his Fifth Amendment right not to disclose anything that might incriminate him. *A fortiori,* one might conclude that Agent Koba's failure to warn respondent simply that he had a right to demand a warrant also would not dictate suppression. That is the result we reach.

This circuit has often considered the question of the waiver of a right to demand a warrant in the criminal search context. Bustamonte v. Schneckloth, 448 F.2d 699 (9th Cir. 1971), cert. granted, 405 U.S. 953, 92 S.Ct. 1168, 31 L.Ed.2d 230 (1972); Schoepflin v. United States, 391 F.2d 390 (9th Cir. 1968); Cipres v. United States, 343 F.2d 95 (9th Cir. 1965). We said in Cipres v. United States, *supra* at 97, that:

". . . [A] waiver cannot be conclusively presumed from a verbal expression of assent. The court must determine from all the circumstances whether the verbal assent reflected an understanding, uncoerced, and unequivocal election to grant the officers a license which the person knows may be freely and effectively withheld. . . ."

The factual situation in this case is different from that in the foregoing cases, and we think that the rule quoted is

not applicable here where there really was no search in the usual sense in which that word is used. We base our decision on the distinction we have recognized elsewhere between an administrative and a criminal search. United States v. Thriftimart, 429 F.2d 1006 (9th Cir. 1970); United States v. Schafer, 461 F.2d 856 (9th Cir. 1972); United States v. Alfred M. Lewis, Inc., 431 F.2d 303 (9th Cir. 1970).

Agent Koba's search is almost identical to the administrative searches involved in *Thriftimart* and *Lewis*, to the extent that Fourth Amendment rights are involved. In those cases we upheld searches of business premises by agents of the Food and Drug Administration which uncovered unsanitary conditions leading to criminal charges against the defendants under the Federal Food, Drug and Cosmetic Act. The defendants argued that since they were not warned they had a right to refuse entry absent the showing of a warrant and since there was no proof they knew they had such a right, the consent given was not an "uncoerced, and unequivocal election to grant the officers a license which the person knows may be freely and effectively withheld."

We held for the first time in *Thriftimart* that an administrative search is to be treated differently than a criminal search. The primary reason for this distinction was held to be:

"In a criminal search the inherent coercion of the badge and the presence of armed police make it likely that the consent to a criminal search is not voluntary. Further, there is likelihood that confrontation comes as a surprise for which the citizen is unprepared. . . ." 429 F.2d at 1009.

We found that these circumstances were not present in an administrative search, and accordingly we held that:

" . . . [T]he absence of coercive circumstances and the credibility of a consent given to an inspection justify a departure from the *Schoepflin* rule in cases of administrative inspection. Here, the managers were asked for permission to inspect; the request implied an option to refuse and presented an opportunity to object to the inspection in an atmosphere uncharged with coercive elements. The fact that the inspectors did not warn the managers of their right to insist upon a warrant and the possibility that the managers were not aware of the precise nature of their rights under the Fourth Amendment did not render their consent unknowing or involuntary. . . . Their manifestation of assent, no matter how casual, can reasonably be accepted as waiver of warrant." 429 F.2d at 1010. [Footnotes omitted.]

We find this reasoning persuasive in disposing of the instant case. In the context of Fourth Amendment rights, respondent had nothing to gain by demanding a warrant. The audit of his records was inevitable. Further, his consent was given in a totally noncoercive atmosphere. Respondent was asked by letter to call Agent Koba to arrange for an appointment for an examination of his books.

▮ We hold therefore that Robson's consent to the search of his records can reasonably be accepted as a waiver of warrant, even though the record does not disclose that Robson was aware of the precise nature of his Fourth Amendment rights.[5]

We conclude that the district court erred in ordering suppression of the three exhibits. Accordingly, the order of the district court is reversed and the cause is remanded to that court for further proceedings.

5. *See also*, United States v. Hammond, 413 F.2d 608 (5th Cir. 1969); Kohatsu v. United States, *supra*.