**UNITED STATES of America,
Plaintiff,**

v.

**Delwin C. POTTER, Defendant.**

**Crim. No. LV. 74–59.**

United States District Court,
D. Nevada.

Nov. 22, 1974.

V. DeVoe Heaton, U. S. Atty., Las Vegas, Nev., for plaintiff.

George H. Spizzirri, Las Vegas, Nev., for defendant.

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

ROGER D. FOLEY, Chief Judge.

Having waived indictment, defendant Potter was charged in an Information with two counts of making and subscribing false income tax returns for the years 1967 and 1968, in violation of Section 7206(1), Internal Revenue Code, 26 U.S.C. § 7206(1). Defendant then filed a motion to suppress evidence secured by agents of the Internal Revenue Service. A hearing on this motion was conducted on June 6, 1974, and the matter was then submitted for consideration by this Court. For the reasons stated herein, the motion to suppress evidence is denied.

## PUBLISHED PROCEDURES

Subsequent to the Supreme Court's decision in Miranda v. Arizona, 384 U. S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Internal Revenue Service published two news releases announcing procedures to be followed by special agents of the Intelligence Division in advising taxpayers of their Constitutional rights. On October 3, 1967, the IRS issued News Release No. 897, which states:

> In response to a number of inquiries, the Internal Revenue Service today described its procedures for protecting the Constitutional rights of persons suspected of criminal tax fraud, during all phases of its investigations.

> Investigation of suspected criminal tax fraud is conducted by Special Agents of the IRS Intelligence Division. This function differs from the work of Revenue Agents and Tax Technicians who examine returns to determine the correct tax liability.

> Instructions issued to IRS Agents go beyond most legal requirements to assure that persons are advised of their Constitutional rights.

> On initial contact with a taxpayer, IRS Special Agents are instructed to produce their credentials and state: "As a special agent, I have the function of investigating the possibility of criminal tax fraud."

> If the potential criminal aspects of the matter are not resolved by preliminary inquiries and further investigation becomes necessary, the Special Agent is required to advise the taxpayer of his Constitutional rights to remain silent and to retain counsel.

> IRS said although many Special Agents had in the past advised persons, not in custody, of their privilege to remain silent and retain counsel, the recently adopted procedures insure uniformity in protecting the Constitutional rights of all persons.

On November 26, 1968, the IRS issued News Release No. IR-949, stating in pertinent part:

> [This] new procedure goes beyond most legal requirements that are designed to advise persons of their rights.

> One function of a Special Agent is to investigate possible criminal violations of the Internal Revenue laws. At the initial meeting with a taxpayer, a Special Agent is now required to identify himself, describe his function and advise the taxpayer that anything he says may be used against him. The Special Agent will also tell the taxpayer that he cannot be compelled to incriminate himself by answering any questions or producing any documents, and that he has the right to seek the assistance of an attorney before responding.

The issue before this Court is whether evidence obtained by means of personal interviews with the defendant and examination of his financial records should be suppressed because of the claimed failure of an IRS Special Agent to undeviatingly follow these published directives of his agency.

## FACTS

Defendant Potter had completed one and one-half years of college before

being elected Justice of the Peace of Henderson, Nevada, in 1964. He has retained that position at all times since then. Prior to this present investigation, Potter had entered into a civil adjustment for tax liability for the years 1965 and 1966.

Revenue Agent Richard Peterson contacted Potter on April 17, 1969, and audited the defendant's 1967 and 1968 tax returns. This investigation, which was civil in nature, continued until Peterson's retirement from the Service on September 30, 1969. During the course of the investigation, Peterson received no instructions from the Intelligence Division. On May 5, 1969, Peterson referred the case to the Intelligence Division for investigation of possible criminal violations, but the Intelligence Division refused to accept it. Peterson and Potter, who was acting upon the advice of his accountant, continued to attempt to reach a settlement, but were unable to do so. Just prior to his retirement, Peterson came upon additional information relating to Potter's tax liabilities for the years in question. Based upon this information, Peterson again referred the matter to the Intelligence Division on September 19, 1969. It should be noted that this motion to suppress is not directed at evidence secured by Agent Peterson in the course of his investigation.

Special Agent Meldin J. Smith of the Intelligence Division was first assigned the Potter case on October 13, 1969, but due to his heavy case load, he did not make his initial contact with Potter until September 16, 1970. After this initial meeting, Smith did not again make contact with Potter until May 11, 1971, at which time Potter turned certain of his records over to Smith. Additional meetings followed, during the course of which Smith obtained additional statements and records from Potter.

Of prime importance here are the warnings given by Smith to Potter at their initial meeting on September 16, 1970. An examination of the record of the hearing conducted on June 6, 1974, reveals that Agent Smith presented Potter with his credentials, identified himself as a Special Agent from the Intelligence Division, and informed Potter that he had been assigned to investigate his income tax matters for the years 1967 and 1968. (R.T. 16, 101, 103). Smith also informed Potter that he did not have to answer any questions or provide any information which might tend to incriminate himself, that he could stop the conversation at any time he wished, that he was entitled to have anyone present to represent him, and that he was entitled to have a lawyer present. (R.T. 103). Agent Smith testified that while he generally informs taxpayers that one of his functions is to investigate potential criminal violations of Internal Revenue laws, he could not recall specifically whether he had done so in this case. (R.T. 103–104). Agent Smith's memorandum of this interview does not reflect that he informed Potter that this would be a criminal investigation. (R.T. 105–107).

Agent Smith testified that while he may not have specifically stated that he was conducting a criminal tax investigation, he felt that he had communicated this fact to Potter in giving him the other warnings. (R.T. 122). On the other hand, Potter testified that Agent Peterson had informed him that another agent would be contacting him concerning his civil tax liability, and that nothing occurred during Smith's initial visit to indicate that the investigation had shifted from civil to criminal in nature. (R.T. 11, 17).

## DISCUSSION

Basically, the IRS news releases indicate that Special Agents are instructed to, upon initial contact with the taxpayer, produce their credentials, identify themselves, and state that one of their functions is to investigate possible criminal violations of the Internal Revenue laws. The taxpayer must also be advised that anything he says may be used against him, and that he has the

right to remain silent and the right to seek counsel before responding to any questions. Here it appears that Agent Smith complied with all of these requirements, except that he cannot recall specifically whether he had advised Potter that one of his functions was to investigate the possibility of criminal tax fraud. Potter testified that he did not, and Smith's memorandum of the initial meeting tends to confirm it. Thus it will have to be assumed that Smith did not advise Potter of the potential criminal nature of the investigation. As such, the issue is whether evidence subsequently obtained must be suppressed because of Smith's failure to advise Potter of the nature of the investigation.

Defendant relies upon two cases in support of his motion to suppress, United States v. Heffner, 420 F.2d 809 (4th Cir. 1970), and United States v. Leahey, 434 F.2d 7 (1st Cir. 1970). In *Heffner*, the taxpayer was an "uneducated and emotionally disturbed man" who was convicted of tax fraud for "claiming a ridiculously large number of exemptions on the Withholding Exemption Certificate (Form W-4)." When he was interviewed by Special Agents, he was advised that he did not have to furnish any information which might tend to incriminate him, but he was not informed that the function of Special Agents was to investigate the possibility of a criminal prosecution for tax fraud, nor was he advised that he could retain counsel to assist him in the interview. On these facts, the Fourth Circuit held that his motion to suppress should have been granted, stating:

> An agency of the government must scrupulously observe rules, regulations, or procedures which it has established. When it fails to do so, its action cannot stand and courts will strike it down. This doctrine was announced in United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954). . . .
>
> It is of no significance that the procedures or instructions which the IRS

has established are more generous than the Constitution requires. 420 F.2d at 811–812.

In *Leahey*, Special Agents failed to observe the IRS announced procedure of warning the taxpayer that they were investigating the possibility of criminal tax fraud. Based upon due process considerations, the First Circuit affirmed the granting of a motion to suppress by the district court, stating:

> Under these circumstances we hold that the agency had a duty to conform to its procedure, that citizens have a right to rely on conformance, and that the courts must enforce both the right and duty. 434 F.2d at 11.

Since the decisions in *Heffner* and Leahey, several courts have considered similar situations where Special Agents of the Intelligence Division have failed to comply exactly with the procedures set forth in the IRS newsletters. Several of these have distinguished *Heffner* and *Leahey* by holding that due process is satisfied by substantial compliance with these procedural guidelines. In United States v. Dawson, 486 F.2d 1326 (5th Cir. 1973), at the initial meeting, the special agents advised the taxpayer that he had the right to decline to answer any questions or to furnish any information to them which he thought might incriminate himself and that he had the right to consult with an attorney before any interview. However, it was not until a subsequent meeting that the agents informed the taxpayer that one of their functions is the investigation of possible criminal tax violations. Here the Fifth Circuit found that the agents had substantially complied with both news releases, and that literal compliance is not required. 486 F.2d at 1330. See also United States v. Mathews, 464 F.2d 1268 (5th Cir. 1972), and United States v. Bembridge, 458 F.2d 1262 (1st Cir. 1972).

Other courts have simply declined to follow the rationale expressed in *Heffner* and *Leahey*. In United States v. Luna, 313 F.Supp. 1294 (W.D.Tex.1970), the taxpayer brought a motion to suppress

on the grounds that the Special Agent had not advised him of his *Miranda* rights as called for in the IRS newsletters. The court denied the motion, stating:

. . . This Court declines to follow *Heffner*. The cases cited in the majority's opinion in *Heffner* dealt with reversals of final agency action because the administrative procedure adopted by the agency was not followed. None dealt with the exclusion of evidence in a federal criminal trial, and hence none, including *Heffner*, weighed the possible value of consistent agency procedures with the need for evidence relevant to the truth sought in a federal criminal trial. While the need to enforce rights granted by the Constitution and laws of the United States may outweigh the interests mitigating against the exclusion of otherwise admissible evidence, the enforcement of an agency policy statement does not, regardless of how desirable that policy might be. The Constitution and laws may of necessity dictate preconditions for the admissibility of evidence in a federal trial; administrative agencies may not. 313 F.Supp. at 1295.

See also United States v. Fukushima, 373 F.Supp. 212, 218 (D.Haw.1974), which is discussed more fully below, wherein Judge Pence specifically declined to follow both *Heffner* and *Leahey*.

Apparently the Ninth Circuit has yet to rule on this precise issue, although it touched upon *Heffner* in United States v. Robson, 477 F.2d 13 (9th Cir. 1973). In *Robson*, the case had been assigned to an Agent from the Audit Division for examination. The Agent (Koba) did not advise the taxpayer of his Fourth, Fifth and Sixth Amendment rights, and he did not warn the taxpayer of the criminal potential inherent in the investigation. This Agent later turned the case over to the Intelligence Division for criminal investigation. During the trial, the government attempted to introduce into evidence certain documents secured by the Agent from the Audit Division

during the course of his investigation. The district court granted the taxpayer's motion to suppress. In reversing, the Ninth Circuit considered several possible grounds for the suppression of the evidence.

The *Robson* court first considered *Miranda* warnings and the Fifth and Sixth Amendments, stating:

In Kohatsu v. United States, 351 F.2d 898 (9th Cir. 1965), we held that where agents of the Intelligence Division had properly identified themselves and disclosed their purpose to audit tax returns, they were under no duty to advise the taxpayer of his Fifth Amendment rights or of the criminal nature of the investigation. We reaffirm that holding, and refuse to follow the only circuit to adopt a contrary view, the Seventh.

This court has repeatedly refused to extend the *Miranda* rule beyond its stated limits. Simon v. United States, 421 F.2d 667 (9th Cir. 1970). As we stated in *Simon*:

"Absent custody in the conventional sense, we have declined to fault a government agent and reverse a conviction for failure to give a *Miranda* type warning unless the facts clearly demonstrated that the appellant was 'deprived of his freedom by the authorities in any significant way.'" *Id.* at 668.

Here respondent was not deprived of his freedom in any way and accordingly we hold that Agent Koba was under no duty to inform respondent of his *Miranda*-type rights, including the fact that the investigation could have potential criminal consequences. 477 F.2d at 16. (footnotes omitted).

The *Robson* court then went on to consider Fifth Amendment due process as it applies to an agent's failure to follow the procedures set forth in the IRS news release:

. . . Assuming *arguendo* that the failure of the IRS to follow its procedures designed to protect the rights of taxpayers amounts to a violation of

due process under the principle of United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954),[4] we find nothing in the record before us indicating that Koba was an agent of the Intelligence Division. 477 F.2d at 17.

Footnote 4 reads: "The Fourth Circuit has so held in United States v. Heffner, 420 F.2d 809 (1970)."

Thus *Robson* makes it clear that the *Miranda* rule does not apply to this situation. It is also clear that the Ninth Circuit has considered the *Heffner* due process rationale on an "assuming *arguendo*" basis only. It is on this point that this Court finds Judge Pence's reasoning in United States v. Fukushima, *supra*, very persuasive.

In *Fukushima*, the taxpayer moved to suppress evidence obtained by Special Agents who had failed to warn him of the criminal nature of their investigation. The taxpayer's argument was based on *Heffner* and *Leahey*. As to this argument, Judge Pence stated:

> *Heffner* well illustrates the axiom: hard cases make bad law. The majority there was justifiably concerned that the government should have ever prosecuted Heffner, and as indicated by the fact that they couched their reversal upon the authority of *Accardi*, *supra*; Service of [v.] Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1959); and Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959), went far out to uncover some sort of not-too-implausible authority upon which to peg their ultimate conclusion. This court, speaking more bluntly than the First Circuit did in *Leahey* concerning the authority underlying *Heffner*, finds the three cases completely inapposite for the same reasons urged by the government in *Leahey*. 373 F.Supp. at 214–215. [footnotes omitted].

Judge Pence then comments on *Leahey:*

> As its verbose opinion indicates, the court in *Leahey* labored at length to find an acceptable rationale by which it could raise the failure of a special agent to follow the IRS guidelines to an invidious constitutional level. 373 F.Supp. at 215.

Of concern to both Judge Pence and this Court is the extension of the *Miranda* rule beyond its stated limits, especially in light of the Ninth Circuit's unwillingness to make such extensions. As stated by Judge Pence:

> Apparently overlooked by the courts in *Heffner* and *Leahey*, and not squarely recognized by the courts in any of the preceding cases, save *Luna*, is the fact that the IRS was concerned only with procedures for protecting the constitutional *rights* of persons as outlined by *Miranda, supra.*

> .    .    .    .    .    .

> Assuming *arguendo* that in the Ninth Circuit anything but short shrift could be given to the doctrine expounded by the *Heffner* and *Leahey* courts, any court that deigns to expand the constitutional rights enumerated by *Miranda*, when the one interrogated by an investigating law officer is *not* in custody, upon which "custody" *Miranda* as well as Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), are bottomed, should at least demand that substantial constitutional *rights* of a taxpayer have been invaded by the special agent in disregard of the published objective of the IRS.

This court certainly cannot elevate the failure of the special agent to use the magic word "criminal" before the words "false and fraudulent," when he advised the defendant of one of his duties, to the level of an invidious invasion of any constitutional right of the taxpayer.

.    .    .    .    .    .

As indicated above, this court can and does consider the IRS news releases to be an attempted administrative expansion of the *Miranda*-type warning problem into a non-custodial situation. Therefore, inasmuch as the Ninth Circuit has held as it did in *Robson*, where the Fifth Amendment due process problem was in a narrow

sense before them, this court can only conclude that in the Ninth Circuit, absent deceit or overreaching, when agents of the Intelligence Division of IRS have properly identified themselves and disclosed their purpose to investigate tax returns, they are under no constitutionally mandated duty to advise the taxpayer of his Fifth Amendment rights or of the criminal nature of the investigation. That they might properly be internally disciplined by the IRS for bypassing any of its own specified procedures gives no legal comfort or rights to the taxpayer. 373 F.Supp. at 216–218. (emphasis in the original).

In denying the motion to suppress, Judge Pence concluded:

> To reiterate, not even under any of the authorities cited by the defendant can this court conclude that the failure on the part of the special agent to use the magic word "criminal" in stating the purpose of his investigation is a "substantial" deviation from the IRS procedures so as to permit this court to find that a constitutional right of the defendant has been encroached upon thereby. This court does not agree with *Heffner* or *Leahey*, or the circuit court in *Bembridge*, that the IRS publication of investigative procedures raises those procedures to the stature of constitutional rights under the due process clause of the Fifth Amendment. Moreover, even if it felt otherwise, this court believes that it would be constrained by the consistent opinions of the Ninth Circuit, as indicated by *Robson*, to hold that the IRS published procedures did not in the slightest erode or in any manner circumscribe the viability of the law on IRS noncustodial warnings, as set forth in *Robson*. 373 F.Supp. at 218.

■ This Court agrees with Judge Pence's reasoning in *Fukushima*. It would be entirely inappropriate for this Court to extend the *Miranda* rule beyond its stated limits, especially in light of the Ninth Circuit's holding in *Robson*. Nor can it be said that a Special Agent's failure to inform a taxpayer, not in custody, of the criminal nature of his investigation is an invidious invasion of any constitutional right of the taxpayer. Therefore, this Court cannot agree with the rulings in *Heffner* and *Leahey* that publication of these IRS procedures raises those procedures to the stature of constitutional rights under the due process clause of the Fifth Amendment. As stated in *Fukushima:*

> . . . [A]bsent deceit or overreaching, when agents of the Intelligence Division of IRS have properly identified themselves and disclosed their purpose to investigate tax returns, they are under no constitutionally mandated duty to advise the taxpayer of his Fifth Amendment rights or of the criminal nature of the investigation. 373 F.Supp. at 218.

## CONCLUSION

■ Defendant Potter is an experienced Justice of the Peace. He had held that office for more than five and one-half years at the time of his initial interview with Special Agent Smith. At that interview, Agent Smith produced his credentials, identified himself, and apprised Potter of his basic *Miranda* rights, thus complying substantially with the procedures set forth in the IRS news releases. Agent Smith's one failure was in not informing Potter of the criminal nature of the investigation. The testimony at the hearing clearly negates any claim that the information obtained from the defendant was not voluntarily given, or that there was any fraud, deceit or overreaching on the part of Agent Smith. In fact, the defendant makes no such claim in his moving papers. Thus it is concluded that the evidence obtained by means of personal interviews with Potter and examination of his financial records should not be suppressed because of the failure of Agent Smith to undeviatingly follow the published directives of the IRS.

Therefore, it is the order of this Court that defendant's motion to suppress is hereby denied.