James CARDWELL, et al.,
Plaintiffs-Appellants,

v.

Jerome KURTZ, et al.,
Defendants-Appellees.

Nos. 83–5665, 83–5866.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 6, 1985.

Decided July 8, 1985.

Kevin Finck, E.O.C. Ord, Law Offices of E.O.C. Ord, San Francisco, Cal., and Lynn Hall, Los Angeles, Cal., for plaintiffs-appellants.

Thomas Preston, Michael L. Paup, Chief, Dept. of Justice, Washington, D.C., for defendants-appellees.

Before SCHROEDER, FLETCHER, and FARRIS, Circuit Judges.

FARRIS, Circuit Judge:

## FACTS

Midwest Growers Cooperative Corporation, two of its officers, James Cardwell and Marvin Martin, and three other corporations of which Cardwell and Martin were officers filed this civil suppression action against the United States and the Commissioner, the District Director, and a number of agents of the Internal Revenue Service. The plaintiffs alleged, *inter alia,* that the IRS had engaged in "fraud, deceit, and trickery" in obtaining Midwest's consent to a 1976 audit and that the IRS's search of Midwest's offices on January 12, 1977 was illegal because it was based on a general warrant. Having earlier dismissed two other claims and the United States as a defendant, the district court granted the defendants' motion for summary judgment and dismissed the action.

In an unpublished memorandum opinion, we dismissed the plaintiffs' appeal as inter-

locutory because Cardwell and Martin had been indicted on federal criminal charges. We remanded the case to the district court to "address the question of Cardwell's entitlement to return of ... copies [of the documents seized during the search of Midwest's offices] to the extent that such documents were not before the court in the criminal proceeding." *Cardwell v. Kurtz,* 672 F.2d 921, slip op. at 2 (9th Cir.1982).

In the criminal action, the district court refused to suppress the fruits of the challenged IRS audit and search. Cardwell and Martin were convicted on stipulated facts. Without reaching the issue of whether consent to the IRS audit was obtained through "fraud, deceit, and trickery," we reversed their convictions solely on the ground that the search warrant did not satisfy the particularity requirement of the fourth amendment. *United States v. Cardwell,* 680 F.2d 75 (9th Cir.1982). The government later dismissed the indictments.

Because we did not reach the audit fraud, deceit, and trickery issue in the criminal case, the plaintiffs requested the district court to expand the scope of the remand proceedings to address that issue, upon which it had granted summary judgment in favor of the defendants three years earlier. Finding that "[t]he injury complained of by the plaintiffs ... [was] speculative, unripe and possibly nonexistent," the court denied the motion and dismissed the remand proceedings.

Subsequently, the plaintiffs filed a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412. In denying that motion, the district court found that even if the plaintiffs were "prevailing parties" within the meaning of the EAJA, they were not entitled to attorney's fees because the position of the United States was substantially justified. The plaintiffs appeal from the denial of both of their motions. We have jurisdiction pursuant to 28 U.S.C. § 1291. *See VonderAhe v. Howland,* 508 F.2d 364, 368 (9th Cir.1974).

STANDARDS OF REVIEW

■ We review the district court's denial of the motion for attorney's fees under the abuse of discretion standard. *Beach v. Smith,* 743 F.2d 1303, 1306 (9th Cir.1984).

"The granting of a summary judgment is reviewable de novo." *Haluapo v. Akashi Kaiun, K.K.,* 748 F.2d 1363, 1364 (9th Cir. 1984). "In reviewing a grant of summary judgment, our task is identical to that of the district court. The district court's grant of summary judgment will be affirmed if, viewing the evidence and the inferences therefrom in the light most favorable to the party opposing the motion for summary judgment, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law." *RFD Publications, Inc. v. Oregonian Publishing Co.,* 749 F.2d 1327, 1328 (9th Cir.1984).

DISCUSSION

I. *Refusal to Expand the Scope of the Remand Proceedings*

■ The plaintiffs' primary argument in favor of expanding the scope of the remand proceedings was that "the ['fraud, deceit, and trickery'] issue [had] never been resolved" because "the Ninth Circuit [had] never addressed" that issue in either this action or the related criminal case. The short answer to this contention, although not the one offered by the district court, is that that issue had been resolved when the district court granted the government's motion for summary judgment. Under the "law of the case" doctrine, the district court did not err in refusing to reexamine an issue it already had decided, particularly when the plaintiffs presented no new evidence or arguments on the fraud, deceit, and trickery issue on remand. However, the fact that the district court was correct in not re-examining this issue does not preclude us from evaluating the district court's original grant of summary judgment.

II. *Summary Judgment: Fraud, Deceit, and Trickery Issue*

A. *Ripeness and Mootness*

In denying the plaintiffs' motion to expand the scope of the remand proceedings,

the district court held that the audit fraud, deceit, and trickery issue had become moot because the statute of limitations for possible criminal charges had run and the government's counsel "ha[d] informed plaintiffs' counsel that the government [had] no intention of using the materials in question at [that] time." The court further reasoned that "the absence of tangible evidence" created by the government's return of all documents seized during the January, 1977 search of Midwest's offices made "[t]he injury complained of by plaintiffs ... speculative, unripe and possibly nonexistent." Only if it could effect "a total purge of all memory," the court stated, could it grant the plaintiffs further relief.

With respect to the audit fraud, deceit, and trickery count, the plaintiffs prayed for, *inter alia*, return of "all schedules, lists, notes, extracts or other memoranda made by defendants from plaintiffs' books, records and documents" and an injunction against the government's use of such materials. The plaintiffs contend that the government still possesses a detailed report based upon the 1976 audit of Midwest. The defendants neither admit nor deny that allegation. They argue that we should not address the fraud, deceit, and trickery issue because no criminal or civil tax proceedings are pending against any of the plaintiffs and that injunctive relief is barred by the Anti-Injunction Act, 26 U.S.C. § 7421(a).

■ The absence of a criminal or civil proceeding against any of the plaintiffs does not render the fraud, deceit, and trickery issue moot or unripe. Under similar circumstances in *VonderAhe v. Howland*, 508 F.2d 364 (9th Cir.1975), we directed the district court to grant part of the injunctive relief sought by the plaintiffs in a civil suppression action. In the instant case, the plaintiffs allege that during the 1976 audit, the IRS illegally took something belonging to Midwest, namely, information contained in Midwest's business records, and incorporated it into one or more audit reports. Part of the relief requested by the plaintiffs is that the government simply give back what it took illegally. *Cf. Linn v. Chivatero*, 714 F.2d 1278, 1283 (5th Cir. 1983) (in holding that district court should have exercised federal question jurisdiction over the plaintiffs' request for return of documents allegedly seized and retained in violation of fourth amendment, court noted that "in the absence of a pending criminal proceeding, the possibility of eventual suppression affords little solace"). If the 1976 audit was illegal, the district court's inability to effect complete relief, which would include purging the memories of government agents, would not justify a refusal to grant as much relief as possible—ordering the government to divest itself of the embodiment of the illegally seized information that could be used to refresh those memories.

A number of problems may arise from allowing the government to retain the report embodying the illegally-obtained information. For example, the IRS might share the report with other government agencies, perhaps influencing them to make some decision to the detriment of the victim of the illegal search and seizure. It could be difficult, if not impossible, for the victim to determine that the second agency relied upon the illegally-obtained information. One of the plaintiffs asserts that it was a victim of precisely this kind of scenario.

■ To the extent that the plaintiffs seek the return of information allegedly seized in violation of their fourth amendment rights, it is not particularly relevant that the government agents who took the information were IRS agents. The Anti-Injunction Act, which prohibits suits intended to "restrai[n] the assessment or collection of any tax," 26 U.S.C. § 7421(a), does not bar us from granting this form of relief. *See Linn*, 714 F.2d at 1282–83. We therefore need not reach the question of the applicability of the Act to the various forms of injunctive relief sought by the plaintiffs. *Compare Linn*, 714 F.2d at 1285 (to extent plaintiff sought to enjoin IRS's use of information on fifth amendment grounds, it was arguable that Anti-Injunction Act prohibited requested relief,

but court held that primary dispute was over retention of records in violation of fourth amendment) *with VonderAhe*, 508 F.2d at 370 (granting plaintiffs forms of injunctive relief similar to those sought by plaintiffs in the instant case without discussing Anti-Injunction Act). The fraud, deceit, and trickery issue is not moot and is ripe for review.

### B. *The Merits*

The question of the propriety of the summary judgment on the fraud, deceit and trickery issue is properly before us because 1) the plaintiffs filed a timely appeal from the district court's summary judgment, 2) we never addressed the fraud, deceit, and trickery issue, and 3) the plaintiffs filed a timely appeal from the district court's final order on remand.

In granting summary judgment, the district court found that in conducting the 1976 audit of Midwest, IRS Agent Rivard

did no affirmative acts and made no affirmative statements which reasonably would have led [Midwest] to believe that her audit was exclusively civil in nature or that there was no possibility of criminal charges ultimately being brought as the result of her examination.

Relying upon *United States v. Robson*, 477 F.2d 13, 18 (9th Cir.1973), the district court concluded that "[t]he 1976 audit of Midwest ... was conducted lawfully and without such deceit and trickery as would amount to a deprivation of plaintiffs' constitutional rights."

The plaintiffs contend that the district court erred in granting summary judgment because a dispute existed over the factual issue of whether or not Agent Rivard made misrepresentations to employees and agents of Midwest to gain their consent to the audit. In their affidavits and declarations, the IRS and the plaintiffs presented contrasting accounts of Agent Rivard's representations. But the district court apparently viewed the disputed facts as immaterial to the issues of the effectiveness of Midwest's consent and the legality of the search under the fourth amendment because none of the alleged misrepresentations could have "affirmatively misled [Midwest] into believing that the investigation [was] exclusively civil in nature and [would] not lead to criminal charges." *Robson*, 477 F.2d at 18.

The district court seems to have interpreted *Robson* as holding that *only* those affirmative misrepresentations that lead a taxpayer to believe that an audit will not lead to criminal charges can vitiate the taxpayer's consent to examine his or her records. In fact, *Robson* not only held that *all* such misrepresentations make the taxpayer's consent ineffective, *id.* at 18, but also stated more broadly "that a consent search is unreasonable under the Fourth Amendment if the consent was induced by the deceit, trickery or misrepresentation of the Internal Revenue agent." *Id.* at 17.

■ We cannot say as a matter of law that the pre-audit misrepresentations alleged by the plaintiffs did not induce Midwest's employees and agents to consent to the audit. For example, Midwest's office manager stated in his declaration[1] that in response to his inquiry, Agent Rivard told him that Midwest had been selected for auditing at random by computer. He further stated that if Agent Rivard had answered his question truthfully, he would have suspended the audit and advised Midwest to contact its attorney. Under *Robson, id.* at 17, Rivard had no duty to inform Midwest that the audit arose from an infor-

---

1. Although the declarations filed by the plaintiffs were not sworn before an officer authorized to administer oaths as required by Rule 56(e) of the Federal Rules of Civil Procedure, *see Local Union No. 490, United Rubber, Cork, Linoleum & Plastic Workers of America v. Kirkhill Rubber Co.*, 367 F.2d 956, 958 (9th Cir.1966), the defendants neither moved to strike nor otherwise objected to them on that ground and have not raised the issue on appeal. Moreover, the record does not indicate that the district court declined to consider the declarations because of this defect in form. We therefore will not disregard them on appeal. *See Arney v. United States*, 479 F.2d 653, 658 n. 4 (9th Cir.1973); *Egger v. Phillips*, 710 F.2d 292, 311 n. 19 (7th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983).

mant's tip, but she could not obtain Midwest's consent to examine its records by affirmatively misrepresenting the reason for the audit. Because a dispute existed over the issues of whether or not Agent Rivard made misrepresentations to employees and agents of Midwest and whether or not the alleged misrepresentations induced their consent to the audit, the district court's grant of summary judgment was erroneous. We remand the case to the district court for a trial on the claims raised in count one of the complaint.

## III. *Attorney's Fees*

The Equal Access to Justice Act provides that a court shall award attorney's fees to a prevailing party other than the United States "in any civil action ... brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d). The defendants argue that the plaintiffs did not prevail in this action and are not entitled to an award of attorney's fees because the only rulings in the plaintiffs' favor came in the related criminal proceeding to which the EAJA does not apply. Although the only rulings in favor of the plaintiffs on the merits of their suppression motions came in the criminal action, they obtained additional relief in the instant action, namely, the return of copies of various documents that had been seized during the search of Midwest's offices. The defendants concede that the plaintiffs "obtained all of the relief they sought in their complaint, albeit in two different forums." The plaintiffs' receipt of some of that relief by stipulation in this action establishes the causal relationship that makes them "prevailing parties" in this action. *See Beach v. Smith*, 743 F.2d at 1306. *See also* H.R.Rep. No. 1418, 96th Cong., 2d Sess. 11, *reprinted in* 1980 U.S. Code Cong. & Ad.News 4953, 4984, 4990 ("A party may be deemed prevailing [under the EAJA] if he obtains a favorable settlement of his case.").

The government's position is "substantially justified" within the meaning of the EAJA if it "has a reasonable basis both in law and in fact." *Timms v. United States*, 742 F.2d 489, 492 (9th Cir.1984). We consider both "the underlying agency action and the legal position of the United States during litigation" in analyzing the substantial justification issue. *Id. See also Hoang Ha v. Schweiker*, 707 F.2d 1104, 1105–06 (9th Cir.1983). "The government bears the burden of proving its position was substantially justified." *Timms*, 742 F.2d at 492.

The plaintiffs contend that the district court erred in holding that the position of the United States was substantially justified because the circumstances of this case are nearly identical to those of an earlier case, *VonderAhe v. Howland*, 508 F.2d 364 (9th Cir.1974), in which we held that a search warrant obtained and executed by IRS agents did not satisfy the particularity requirement of the fourth amendment. The language of the search warrants at issue in the two cases is nearly identical, and in each case the investigation preceding the issuance of the warrant had "focused the [IRS's] attention on certain portions of the [taxpayer's] business record." *United States v. Cardwell*, 680 F.2d 75, 78 (9th Cir.1982). In the related criminal appeal, we concluded that

> [h]ere, as in *VonderAhe*, '[u]pon the information available to it, the government knew exactly what it needed and wanted and where the records were located. There was no necessity for a massive re-examination of all records bearing on income and expenses.'

*Id.* at 78 (quoting *VonderAhe*, 508 F.2d at 370). The plaintiffs argue that because the defendants' actions in obtaining, executing, and defending the validity of the general warrant ran counter to the controlling precedent of *VonderAhe*, those actions did not have a reasonable basis both in law and in fact.

In limiting attorney's fees awards under the EAJA to cases in which the position of the United States is not substantially justi-

fied, Congress intended to avoid deterring the government "from advancing in good faith ... novel but credible extensions and interpretations of the law." H.R.Rep. No. 1418, 96th Cong., 2d Sess. 11, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4984, 4990. In the related criminal appeal, the government argued that under the Supreme Court's decision in *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), a case decided after *VonderAhe* and before the warrant in question was issued, the portion of the search warrant indicating that only "the fruits and instrumentalities of violations of 26 U.S.C. § 7201" were to be seized satisfied the particularity requirement of the fourth amendment. *Cardwell,* 680 F.2d at 76–78. The issue presented is whether or not that argument advanced a credible interpretation or extension of *Andresen.*

In the related criminal appeal, we stated that "[t]he warrant at issue [here] is significantly different from the one involved in *Andresen." Cardwell,* 680 F.2d at 77. "The only limitation [placed by the warrant] on the search and seizure of [the plaintiffs'] business papers was the requirement that they be the instrumentality or evidence of violation of the general tax evasion statute, 26 U.S.C. § 7201." *Id.* The warrant involved in *Andresen* limited the search and seizure not only to evidence of violations of a specific statute but also to items pertaining to the sale of a given lot (lot 13T) in a particular subdivision of a particular county. In holding that the warrant's reference to "evidence of crime at this [time] unknown" did not violate the particularity requirement of the fourth amendment, the Supreme Court "[relied heavily] on the lot 13T limitation[,] suggest[ing] that the omission of such a limitation would have been fatal to the warrant's validity." *Cardwell,* 680 F.2d at 77. *See also Andresen,* 427 U.S. at 480–81 & n. 10, 96 S.Ct. at 2748–49 & n. 10.

Because the warrant at issue here did not contain a "preambulatory statement limiting the search to evidence of particular criminal episodes," *Cardwell,*

680 F.2d at 77, the presence of which was central to the Supreme Court's determination that the search warrant at issue in *Andresen* was valid, the government did not advance a credible interpretation or extension of the law when it invoked *Andresen* in defense of the warrant. Our conclusion that the position of the United States was not substantially justified is reinforced by the decision of the First Circuit in *United States v. Abrams,* 615 F.2d 541, 546–47 (1st Cir.1980), which held that a similarly general warrant was invalid under *Andresen* even though it authorized the seizure only of evidence showing violations of 18 U.S.C. § 1001. *See Hoang Ha,* 707 F.2d at 1106 (although previously decided cases are not conclusive on substantial justification issue, they "are surely a factor to consider in determining if the government's position is reasonable"). The district court abused its discretion in holding that the government's position was substantially justified and in denying the plaintiffs' motion for attorney's fees. We therefore remand to the district court for determination of the proper amount to be awarded pursuant to the EAJA.

REVERSED and REMANDED.