Jerry A. TRUITT and James K. Montgomery, Jr., Plaintiffs-Appellants,

v.

William M. LENAHAN et al., Defendants-Appellees.

No. 75–1694.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 6, 1975.

Decided Feb. 5, 1976.

Paul P. Lipton, Milwaukee, Wis., G. Patrick Arnoult, Arnoult & Hill, Memphis, Tenn., for plaintiffs-appellants.

Thomas F. Turley, Jr., U. S. Atty., Memphis, Tenn., Scott P. Crampton, Daniel F. Ross, Gilbert E. Andrews, Chief, Appellate Section, Tax Div., Dept. of Justice, Washington, D. C., for defendants-appellees.

Before PHILLIPS, Chief Judge, and PECK and LIVELY, Circuit Judges.

JOHN W. PECK, Circuit Judge.

Plaintiffs-appellants, formerly partners in practicing veterinary medicine, filed the instant complaint seeking primarily to suppress the use of documents certain defendants-appellees, Internal Revenue Service special agents, seized in a search, pursuant to a warrant, on April 12, 1974, of appellants' offices. Appellants also prayed for money damages. The district court rejected appellants' constitutional claims and, on cross-motions for summary judgment, dismissed appellants' complaint with prejudice.

Briefly, the record reflects that on September 25, 1972, the IRS Intelligence Division received a "tip" from a former employee of appellants claiming that appellants had concealed income. An Intelligence Division special agent thereafter transmitted the information "to the Audit Division for whatever action they deemed appropriate" because "there was not sufficient information . . . to warrant an investigation by the Intelligence Division." [1] From September, 1973, to November, 1973, an Audit Division revenue agent investigated the claimed failure to report income and discovered, from an inspection of appellants' books, an apparent substantial understatement of income. When appellants refused to permit the revenue agent to reproduce certain documents for a fuller inspection, the agent on November 12, 1973, referred the investigation to the Intelligence Division, which received the referral in February, 1974. The Intelligence Division, after interviewing the original informant, obtained the search warrant on April 11, 1974.

On appeal, appellants claim that seizing the documents violated their Fifth Amendment privilege against self-incrimination. Assuming that such privilege would otherwise preclude appellants from being compelled to produce those documents,[2] *United States v. Beck,*

---

1. Intelligence Division special agents investigate possible criminal violations of the Internal Revenue Code. Audit Division revenue agents "conduct . . . field audits of tax returns . . . requiring the application of audit techniques and the review of books, records and other information to determine the correct tax liability." Joint Appendix 45, 47–48. See IRS News Release No. 897 (Oct. 3, 1967), quoted in *United States v. Trnka,* 385 F.Supp. 628, 632 n. 3 (D.N.D.1974), and in *United States v. Potter,* 385 F.Supp. 681, 682 (D.Nev.1974).

2. Because we hold that "[a]dmitting properly seized 'personal papers' cannot violate the Fifth Amendment privilege against self-incrimination," we can assume that such privilege would otherwise protect appellants from compelled production of those documents. Consequently, it is unnecessary to adjudicate appellees' claim that neither Montgomery, having previously sold his interest in the partnership

511 F.2d 997, 1002–03 (6th Cir.), *cert. denied,* 423 U.S. 836, 96 S.Ct. 63, 46 L.Ed.2d 55 (1975), *United States v. Gargotto,* 476 F.2d 1009, 1013–14 (6th Cir. 1973), *cert. denied,* 421 U.S. 987, 95 S.Ct. 1990, 44 L.Ed.2d 477 (1975), and *United States v. Blank,* 459 F.2d 383, 385 (6th Cir. 1972), *rev'g* 330 F.Supp. 783 (N.D. Ohio 1971), *cert. denied,* 409 U.S. 887, 93 S.Ct. 111, 34 L.Ed.2d 143 (1972), establish that "[a]dmitting properly seized 'personal papers' cannot violate the Fifth Amendment privilege against self-incrimination." *Accord, e. g., Shaffer v. Wilson,* 523 F.2d 175, 177–79 (10th Cir. 1975), *petition for cert. filed,* 44 U.S.L.W. 3249 (Oct. 21, 1975) (No. 75–601); *United States v. Murray,* 492 F.2d 178, 191 (9th Cir. 1973); *United States v. Scharfman,* 448 F.2d 1352, 1355 (2d Cir. 1971), *cert. denied,* 405 U.S. 919, 92 S.Ct. 944, 30 L.Ed.2d 789 (1972). Moreover, *Blank* explicitly and *Beck* implicitly rejected *Hill v. Philpott,* 445 F.2d 144 (7th Cir.), *cert. denied,* 404 U.S. 991, 92 S.Ct. 533, 30 L.Ed.2d 542 (1971), the case which appellants cite as "squarely support[ing]" their claim.

■ We also reject appellants' attack on the search and seizure. Rather than challenging the warrant as being an "overly broad" general warrant, see *United States v. Scherer,* 523 F.2d 371, 376 (7th Cir. 1975), *VonderAhe v. Howland,* 508 F.2d 364, 368–70 (9th Cir. 1974), or challenging appellees' assertion of "probable cause" that documents used in income tax evasion were located at appellants' offices, appellants challenge the permissibility of the seizure of the documents where appellees "had no reason to believe that any records would be destroyed or secreted." Despite an extensive search, we have found no authority to overturn the district court's view that "[t]here simply is no requirement, so far as probable cause is concerned, that the book and records sought were likely to be hidden or destroyed." Even were we to accept certain *VonderAhe*

*dicta,* the fact remains that appellees requested, and obtained, the search warrant only after appellants refused to permit the reproduction of certain documents. See *VonderAhe, supra,* 508 F.2d at 366, 369. But see *United States v. Ciaccio,* 356 F.Supp. 1373 (D.Md.1972).

■ Finally, appellants claim that certain appellees, Audit Division revenue agents, deprived them of due process by failing to advise them of their constitutional rights in the earlier, civil investigation of appellants' tax liability. Appellants assert no direct violation of the IRS policy, as embodied in IRS News Release Nos. 897 (Oct. 3, 1967), 949 (Nov. 26, 1968), of requiring special agents to advise those being investigated of their constitutional rights. See *United States v. Sourapas,* 515 F.2d 295 (9th Cir. 1975); *United States v. Leahey,* 434 F.2d 7 (1st Cir. 1970); *United States v. Heffner,* 420 F.2d 809 (4th Cir. 1969). But see *United States v. Potter,* 385 F.Supp. 681 (D.Nev. 1974); *United States v. Fukushima,* 373 F.Supp. 212 (D.Hawaii 1974). Moreover, the record reflects that the special agents, upon being referred the investigation, complied with the news releases. Joint Appendix 83–84, 95. Similarly, appellants neither assert a violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), nor could there be a *Miranda* violation because there is no evidence or claim that appellants were ever in "custody." E. g., *United States v. Allen,* 522 F.2d 1229, 1233 (6th Cir. 1975), *cert. denied,* —— U.S. ——, 96 S.Ct. 854, 47 L.Ed.2d 82 (1976); *United States v. Carter,* 462 F.2d 1252, 1256 (6th Cir.), *cert. denied,* 409 U.S. 984, 93 S.Ct. 324, 34 L.Ed.2d 248 (1972). Accord, e. g., *United States v. Robson,* 477 F.2d 13, 16 (9th Cir. 1973); *Cohen v. United States,* 405 F.2d 34, 36–39 (8th Cir. 1968); *United States v. Trnka,* 385 F.Supp. 628, 629–30 (D.N.D.1974). Rather appellants claim that the Intelligence Division special agent, rather than transmitting the "tip"

to Truitt, nor Truitt can assert the privilege even against compelled production of the doc-

uments, those documents purportedly being essentially partnership business documents.

to the Audit Division for its revenue agents' investigation, should have retained the "tip" for special agents' investigation. Had the "tip" been retained, appellants argue that they would, and should, have received the warnings embodied in News Releases 897 and 949. The record, however, discloses no violation of appellants' due process rights in the assignment of the investigation to the Audit Division. See *United States v. Leonard*, 524 F.2d 1076, 1088–1090 (2d Cir. 1975); *United States v. McCorkle*, 511 F.2d 482, 487–489 (7th Cir. 1975) (*en banc*); *Robson, supra*, 477 F.2d at 16–17; *Trnka, supra*. The record reflects that Intelligence Division special agents receive telephone "tips" (Joint Appendix 36, 40), which are often, as here, unconditionally[3] transmitted to the Audit Division (Joint Appendix 40–41), see *Leonard, supra*, 524 F.2d at 1088–89, *Robson, supra*, 477 F.2d at 14–18, and "occasionally" later referred to the Intelligence Division if the Audit Division revenue agents uncover "indications of criminal tax fraud" (Joint Appendix 41) or "the possible existence of fraud," *Cohen, supra*, 405 F.2d at 35 n. 3 (8th Cir. 1968); *Trnka, supra*, 385 F.Supp. at 630 n. 2.

Affirmed.

3. The uncontroverted affidavits of the Audit Division revenue agents and Intelligence Division special agents establish that, after the transmittal to the Audit Division and prior to the referral to the Intelligence Division on November 12, 1973, no Intelligence Division employee "attempt[ed] to direct or control the audit activities of the Audit Division in any way." Joint Appendix 38, 41, 58, 61–62, 86. Rather the Audit Division "audits were completely controlled by the [Audit Division revenue] agents assigned . . . until they were referred to, and accepted by, the Intelligence Division." Joint Appendix 43. Accord, Joint Appendix 48–49. The "unconditional" nature of the transmittal has sometimes been mentioned in finding no impropriety in assigning the investigation to the Audit Division revenue agents. *United States v. Robson*, 477 F.2d 13, 17 (9th Cir. 1973).