**UNITED STATES of America, Plaintiff,**

v.

**Osvaldo MALDONADO GARCIA, Defendant.**

**Crim. No. 86–175 (RLA).**

United States District Court,
D. Puerto Rico.

March 19, 1987.

Warren Vázquez, Asst. U.S. Atty., Hato Rey, Puerto Rico, for plaintiff.

Antonio Jiménez-Miranda, San Juan, Puerto Rico, for defendant.

## AMENDED OPINION AND ORDER

ACOSTA, District Judge.

On April 2, 1986 a five count indictment was returned by the Grand Jury against defendant Osvaldo Maldonado Garcia charging that on or about March 10, 1986, Mr. Maldonado and two accomplices commandeered a United States Postal Service truck, kidnapped the postal carrier driving it and robbed him at gunpoint of the packages and parcels in his custody. Mr. Maldonado is charged with violating 18 U.S.C. §§ 1201(a)(5); 2114; 924(c); 1702; 1708; 2 and 16.

### A. PROCEDURAL BACKGROUND

Before the Court is Mr. Maldonado's motion to supress all the evidence the government obtained against him filed on May 14, 1986. The physical evidence, consisting mainly of opened mail packages not addressed to defendant and a handgun, was obtained when various armed postal inspectors and police officers, acting on an anonymous tip but without a search warrant, searched Mr. Maldonado's apartment in the presence of Mr. Maldonado, his wife and a friend. Mr. Maldonado was arrested at the scene. He provided the government, either at his apartment or thereafter, with a signed statement saying he had authorized the search, a signed waiver of rights, and a signed and sworn confession. All three documents were duly witnessed.

An arraignment hearing was held before a United States Magistrate on March 17, 1986. A hearing on the motion for suppression of evidence was held before another Magistrate on June 17, 1986. Mr. Mal-

donado did not testify at this hearing but his wife did. The motion itself alleges that the government agents deceitfully gained entry into defendant's apartment and that the subsequent search and seizure without a warrant and without defendant's voluntary consent was a violation of defendant's Fourth Amendment rights.

The Magistrate issued a Report and Recommendation on September 11, 1986 recommending that the motion to suppress be denied. He found that there was a consent search. Thereafter, defendant moved the Court to provide him with transcripts of the hearings in order to best object to the Magistrate's recommendations filed on October 6, 1986. The request was granted on October 9, 1986. On January 9, 1987, defendant filed his supplemental brief in objection to the Report and Recommendation. The government filed its second opposition to the motion to suppress on January 29, 1987. The first was filed on October 9, 1986.

For the reasons set forth below, the Court will grant defendant's motion.

### B. FACTUAL BACKGROUND

On March 10, 1986, United States Postal Inspectors Rivera, Maxfield, Rodríguez and Pacheco along with five policemen, acting on a anonymous tip, went to the residence of Osvaldo Maldonado García looking for stolen mail. The time was about 4:30 p.m. and the place was a ninth floor apartment in a low-income housing project.

One of the agents knocked several times on Mr. Maldonado's door and identified himself as a policeman. He heard a voice inside say "Do not open". The police officer then said, "I have a 'citación'," meaning a summons, "open the door." After approximately three minutes of knocking, Mr. Maldonado opened the door. At that moment, at least two agents quickly came into the apartment. While Inspector Pacheco talked to Mr. Maldonado, the other agent "secured" the apartment and the remaining agents stopped just inside the apartment. (There is contradicting testimony, even among the agents, as to whether the defendant gave them permission to come in.

*See,* Tr. of suppression hearing pp. 37, 47–49, and 118, and Tr. of detention hearing pp. 29 and 32). All the agents had drawn guns, either shotguns or handguns, and half of them were wearing bullet proof vests.

Inspector Pacheco told the defendant that he was looking for stolen mail and would like to search the apartment. The Inspector then warned the defendant that if he didn't consent to the search in writing, the agents would go to Federal Court to get a search warrant. Mr. Maldonado proceeded to write a statement mostly dictated to him by Inspector Pacheco. Previously, he was read his *Miranda* rights. He begged the authorities not to arrest his pregnant wife.

The apartment was littered with postal packages and merchandise. On defendant's balcony the agents found four rounds of ammunition. On the balcony next door they found a handgun.

Thereafter, the defendant and his wife were taken to the offices of the postal inspectors. Mr. Maldonado, visibly sick, continually told the agents that he would sign anything if his wife were not charged. He then signed a waiver of rights and a confession.

### C. ARGUMENTS

Defendant contends that the search at issue should have been conducted with a warrant and that the circumstances of this case do not meet the test for a consent search as an exception to warrantless searches. The government should have first corroborated the anonymous tip, says defendant, with surveillance, etc., because only then would it have the requisite knowledge to request a search warrant. Also, there was sufficient time to request a warrant since there were no exigent circumstances, such as destruction of evidence, present in this case that would cause the police to act without a warrant. However, the government agents did not try to get a warrant in advance, argues defendant, because they did not have the requisite probable cause since they were acting only on an anonymous and unreliable tip. In-

stead the government agents deceived the defendant to let them in by claiming they had a summons. Once inside, with the mail packages in plain view, they emotionally and psychologically coerced defendant, a drug addict with a pregnant wife, into letting them search the apartment. Finally defendant argues that his consent to search was granted only in submission to a claim of lawful authority.

■ The government's response is simply that the defendant was never threatened and that the consent was freely given. Testimony by the government agents involved concedes defendant's point that the government did not have probable cause nor was it certain that there was any incriminating evidence in the apartment, and thus no emergency conditions existed. Therefore, we are faced first off with a situation where government agents admit that they had no probable cause to search defendant's apartment. Nor did they have a good faith belief from the totality of the circumstances that they needed to act immediately without a warrant. *U.S. v. Kunkler*, 679 F.2d 187 (9th Cir.1982).

■ It is well established that a warrantless search is *"per se* unreasonable ... subject only to a few specifically established and well-delineated exceptions." *Thompson v. Louisiana*, 469 U.S. 17, 105 S.Ct. 409, 410, 83 L.Ed.2d 246 (*per curiam*) *reh. denied*, 469 U.S. 1197, 105 S.Ct. 981, 83 L.Ed.2d 983 (1985) (quoting *Katz v. U.S.*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576). The only exception which allows a full search for an investigative purpose without a search warrant or any kind of probable cause is for cases of authorized and voluntary consent. *See Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

An application of this exception involves first an analysis of whether the consent was voluntarily given and, if so, then we must ask whether the execution and scope of the search conformed with the precise limits of the exception as it has been judicially defined.

The threshold and controlling issue before us then is whether defendant's con-

sent to a warrantless search was "voluntary". *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). To determine whether defendant's consent was voluntary we must look at the "totality of all the circumstances."

[I]f under all the circumstances it has appeared that the consent was not given voluntarily—that it was coerced by threats or force, or granted only in submission to a claim of lawful authority—then we have found the consent invalid and the search unreasonable.

*Id.* at 233, 93 S.Ct. at 2050.

■ Factors to be considered in analyzing the totality of the circumstances include defendant's age, schooling, level of intelligence, clearheadedness (whether intoxicated on drugs or alcohol), defendant's awareness of the right to withhold consent, and, more importantly here, the nature of the police behavior; i.e., whether the consent was subsequent to a claim of authority; whether the government agents gained entry by ruse or deception or whether the government used implied or explicit threats.

Although defendant's level of schooling and intelligence is not certain from the record (an agent did testify that Mr. Maldonado had achieved high school equivalency, Tr. 82), it is apparent that he could read and write given his handwritten statements. There is a question, however, as to whether defendant's drug addiction, and possible intoxication or withdrawal at the time of his arrest, affected his ability to reason and thus tainted the validity of his consent.

Also, defendant claims he was emotionally upset at the time out of concern for the welfare of his wife, who was pregnant. His wife was also arrested but not indicted.

These factors do not prove much by themselves, but they nonetheless cumulatively serve to cast some doubt on defendant's capacity at the relevant time. In other words, they help to account "the possibly vulnerable subjective state of the person who consents." *Schneckloth v. Bustamonte*, 412 U.S. at 229, 93 S.Ct. at 2048.

Mr. Maldonado's drug addiction (Tr. 107), his poor physical condition (Tr. 85), his repeated expressions of concern for his pregnant wife, and his statements to police that if they let her go, he would tell all (Tr. 52, 54, and 105–107), are all factors that indicate the significant emotional, psychological and even physical vulnerability of Mr. Maldonado's subjective state.

There is no dispute that the government gained entry to defendant's apartment by ruse and deception. They told defendant, after having knocked for over three minutes and having heard someone inside say "don't open", (Tr. 10–12) that they were the police and were there to serve him with a summons (which was not true). Defendant's wife testified that the door was opened only because of what the government agents said (Tr. 98). The government does not deny this, but claims that defendant was under no obligation to open the door since a summons is not a warrant and does not require personal service and that, in any case, the deception to gain entry was overriden by defendant's subsequent consent to the search.

 It is true that consent is not necessarily vitiated by deception and subterfuge on the part of the police. *See, e.g., U.S. v. Andrews*, 746 F.2d 247 (5th Cir. 1984) *cert. denied, Andrews v. U.S.*, 471 U.S. 1021, 105 S.Ct. 2032, 85 L.Ed.2d 314 (1985). But officers cannot use a ruse to gain access unless they have more than mere conjecture that criminal activity is underway. To hold otherwise would be to give police a blanket license to enter homes randomly in the hope of uncovering incriminating evidence and information. That this last was the intention of the police in this case is evident from the testimony of Postal Inspector Pacheco who admitted that he did not know if there was any evidence in the apartment, that he was acting solely on an anonymous tip, that he did not have probable cause and that his motivation was to fish for incriminating evidence.

... As soon *as I could prove that there was mail, stolen mail in there, I was going to arrest them* ... We received an anonymous call saying that there was mail in that apartment, *that's why we went over there, knocked on the door to see if we get lucky and they open the door.*

(Tr. 64. Emphasis added.)

Likewise, we are not convinced by the government's argument that the subterfuge used here was in a sense harmless since a summons is not the same as a warrant. Firstly, we are not sure this distinction is a matter of common knowledge. Secondly, the fact that the government agents repeatedly knocked on defendant's door for several minutes while saying they had a summons gave their conduct an urgency and an authority that transcended whatever literal and practical meaning can be given to the term "summons". Lastly, simply because police regularly use subterfuge to gain access to putative defendants and that courts have generally condoned this conduct does not mean that the same can be carried out with impunity. *See Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966) (The Fourth Amendment can be violated by guileful as well as by forcible intrusions into a constitutionally protected area); *Lee v. United States*, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952) (an unlawful seizure may violate the Fourth Amendment although the entry upon the premises was by subterfuge or fraud rather than force.).

Finally, we return to the most important issue in this case: was Mr. Maldonado's consent to search his apartment voluntarily given or was it coerced by explicit or implicit means?

 There is no evidence that the government gained entry by means of overt physical threats or force. Indeed, defendant's wife testified they did not "push" or overtly threaten her husband (Tr. 117). There is sufficient evidence, however, that the government's conduct was so inherently coercive that it vitiated defendant's consent. *See Florida v. Royer, supra.*

Government agents testified that once they got Mr. Maldonado to open the door, they, as the Magistrate put it at the hearing, "shot in" (Tr. 28–29). They secured

the area and told defendant that they were looking for stolen mail (Tr. 11, 14) and that "we would like to search your apartment. You either give me that [authorization in writing] or we will have to go to the Federal Court to obtain a search warrant. So he agreed to give me the authorization." (Testimony of Inspector Pacheco, Tr. 16).

The Supreme Court has stated that consent given subsequent to an unfounded claim of authority is not valid. *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968) (search unlawful where consent only gained because of wrongful assertion by searching official that he had a warrant). Other federal and state courts have echoed the *Bumper* rationale. "If the individual has merely acquiesced in a show of authority he should not be found to have consented." *U.S. v. Vazquez*, 638 F.2d 507, 524 (2nd Cir.1980).

In the present case, it is hard to envision how plaintiff can be said to have freely and independently given his consent to a search. Here we have a man in a vulnerable subjective state, who is told by a police officer to open the door. He then is surrounded by government agents with drawn guns amidst a disarray of mail packages that appeared stolen and a discarded gun and bullets. These same uniformed, armored agents then tell him that they want to search his apartment and that if he does not authorize such a search they would get a search warrant (something they could not do as they had no probable cause prior to entry and whatever cause they gained at the scene was tainted by their fraudulent entry). Mr. Maldonado did not consent to the search, quite the opposite, he essentially gave in to the overwhelming, and, particular to him, disconcerting claims and manifestations of authority.

Like the use of the search warrant in *Bumper*, the agents here gained entry by claiming they had an official document to serve which under the circumstances could easily be confused by defendant as a warrant. Moreover, opening a door does not mean that government officials can go in and search, which is exactly what the agents here did but termed it "securing the

apartment". *See Lo-ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (bookstore owner had legitimate expectation of privacy against governmental intrusion and warrantless search); *Massachusetts v. Painten*, 368 F.2d 142, 143 (1st Cir.1966) ("... acquiescence when police knock and exhibit a badge is not true consent to a search ..."). Once inside, the agents made a sobering show of force in that there were nine of them, some wearing bullet-proof vests, all armed with shotguns and/or handguns which were drawn. Such a show of force also argues against voluntary consent.

Submissions to declarations by officers that they want to search have long been viewed as coercive. *See Amos v. U.S.*, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654 (1921) (revenue officers stating they had come to search the house for violations of revenue laws).

■ Consent may be valid if given in response to an officer's declaration that he will *seek* a warrant. Consent is invalid, however, where an officer categorically states he will *obtain* a warrant, especially when he knows that there are no grounds on which such a warrant could issue. *See Illinois v. Gates*, 462 U.S. 213, 238–244, 103 S.Ct. 2317, 2332–2335, 76 L.Ed.2d 527 (1983) (fourth amendment does not require "standard that leaves no place for anonymous citizen informants" but there must be independent investigation and corroboration that provides "substantial basis for crediting the hearsay"). Lastly, there was testimony at the suppression hearing to the effect that the defendant was not told of his right to withhold consent. *U.S. v. Mendenhall*, 446 U.S. 544, 558–559, 100 S.Ct. 1870, 1879–1880, 64 L.Ed.2d 497 (1980). Postal Inspector Rivera was asked: "... had you forewarned [the defendant] that he doesn't have to give his consent?" He answered, "*No*, everything was voluntary." (Tr. 32. Emphasis added.)

■ It is clear that the government does not have to prove that the defendant understood at the time of the seizure that consent could be withheld. *Schneckloth*, 412 U.S. at 234, 93 S.Ct. at 2051. But the

"subject's knowledge of a right to refuse is a factor to be taken into account . . ." *Id.* at 249, 93 S.Ct. at 2059. We cannot imply such knowledge from the fact that the government threatened the defendant with seeking a warrant if he did not consent. In the intimidating context in which that statement was made, it would be unreasonable to pretend that the defendant interpreted it as an option he could freely make. In other words, it would take quite some foresight and strength of character for this defendant to understand that he could rightly tell the armed men surrounding him, and spread out through his apartment, that they had to leave.

We also note that unlike the facts of *Schneckloth,* which involved third-party consent to an automobile search, the Supreme Court there had uncontroverted testimony of lack of threats by the police and a "very congenial" exchange at the scene of the search; whereas here there was no congeniality whatsoever.

In sum, a scrutiny of the totality of all the circumstances in this case convincingly shows that the consent gained was not voluntarily given but was implicitly coerced by the government through a wrongful claim of authority, the use of subterfuge as well as subtle and not so subtle psychological and emotional coercion.

■ We, therefore, grant defendant's motion to suppress all the evidence in this case. We include the signed confession obtained after defendant was arrested not only because it was tainted by the preceding unlawful search and seizure and thus was a "fruit of the poisonous tree," *see Brown v. Illinois,* 422 U.S. 590, 603–604, 95 S.Ct. 2254, 2261–2262, 45 L.Ed.2d 416 (1975), but also because, looking at the totality of the circumstances described above, we feel the confession was improperly coerced. *See Townsend v. Sain,* 372 U.S. 293, 307, 83 S.Ct. 745, 754, 9 L.Ed.2d 770 (1963) (test for voluntariness is whether suspect's will overborne, or whether confession product of rational intellect and free will). Here we find that the defendant's capacity for self determination was seriously impaired by his own physical state and the psychological impact of the nature of the police conduct surrounding the events leading to the confession. *Culombe v. Connecticut,* 367 U.S. 568, 603, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037 (1961).

## D. CONCLUSION

We do not treat the offense of which defendant is accused lightly. However, we are profoundly concerned with the conduct of the government agents in this case. And we are particularly aware of our responsibility to guard against Fourth Amendment violations. "It is the duty of courts to be watchful of the constitutional rights of the citizen, and against any stealthy encroachments thereon." *Schneckloth,* 412 U.S. at 229, 93 S.Ct. at 2048 (quoting *Boyd v. U.S.,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886)).

Our *de novo* review of the Magistrate's findings and a careful reading of the transcribed testimony provided to us shows that the actions of these agents run counter to the mandate and rationale of the Fourth Amendment, to wit, the avoidance of a police state. We cannot countenance police or federal agents acting in the unjustified way they have done so here. Their conceivably valid objectives do not excuse their invalid means. The Fourth Amendment assures all citizens that their homes and private lives will not be invaded capriciously or without any lawful authority. In the case at bar, the defendant was denied this constitutional entitlement.

Accordingly, we reject the United States Magistrate's Report and Recommendation of September 11, 1986, and hereby grant defendant Maldonado's motion to suppress the evidence in this case.

IT IS SO ORDERED.